UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY ONEIL DAVIS,

                Plaintiff,                Civil Action No.: 13-cv-10828
                                                  Honorable Terrence G. Berg
                v.                           Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 13]**

Plaintiff Jeremy Davis brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 13], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [2].

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be GRANTED, Davis's motion [9] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On March 21, 2005, Davis filed an application for DIB, alleging disability beginning July 26, 2004.  (Tr. 57).  The claim was denied initially on July 1, 2005.  (*Id.*).  Davis timely filed a request for an administrative hearing, which was held on March 19, 2008, before ALJ Robert Asbille.  (*Id.*).  Davis testified at the hearing and was represented by attorney Richard Doud.  (*Id.*).  Also appearing at the hearing were medical expert Dr. Ronald A. Semerdijan and vocational expert ("VE") Susan Entenberg.  (*Id.*).  At the hearing, Davis amended his application to seek a closed period of disability from July 26, 2004, to December 31, 2006.  (*Id.*).  On March 28, 2008, the ALJ found Davis not disabled.  (Tr. 54-66).  The Appeals Council denied review on September 23, 2010.  (Tr. 17).  Davis did not file for judicial review of this decision.

On November 17, 2008, Davis filed a new application for DIB and an application for SSI, alleging disability as of March 29, 2008, the day after the previous ALJ decision.  (Tr. 145-55).  His claims were denied initially on December 19, 2008.  (Tr. 69-76).  Davis filed a timely request for an administrative hearing, which was held on January 4, 2011, and continued on June 28, 2011, before ALJ Christopher Ambrose.  (Tr. 29-45; 46-53).  Davis, represented by attorney Mike Lupisella, testified, as did VE James Engelkes.  (Tr. 29-45).  On July 1, 2011, the ALJ found Davis not disabled.  (Tr. 14-27).  On December 28, 2012, the Appeals Council denied review.  (Tr. 1-3).  Davis filed for judicial review of that final decision on February 28, 2013.  [1].

### B.    Background

#### 1.    *Disability Reports*

In a November 17, 2008 field office report, the interviewer noted that Davis arrived

wearing a brace on his left wrist. (Tr. 201). In an undated disability report, Davis reported that the condition preventing him from working is a left hand and back injury. (Tr. 204). He reported being unable to lift or bend, and that it is difficult for him to use his left hand. (*Id.*). He also reported shooting pains in his arm that radiate to the left side of his chest. (*Id.*). He reported that he stopped working on December 1, 2004, due to his disability. (*Id.*). Prior to that time he had worked in a factory for seven years. (Tr. 205). He reported seeing a number of doctors and being prescribed Ibuprofen 800 for pain, which made him drowsy. (Tr. 206-208).

In a December 6, 2008 function report, Davis reported that he lives in a house with family. (Tr. 219). He reported that his day consists of waking up, getting his son ready for school, which includes making him something to eat and taking him to school. (*Id.*). Davis then spends time reading the paper or surfing the internet "looking for opportunities or talkin[g] to people or doin[g] research." (*Id.*). He reported attending drug and alcohol classes twice a week. After school, he spends time with his son and his nieces and nephews at home. (*Id.*).

Davis reported caring not only for his son, but also for a dog. (Tr. 220). He reported that his son's mother and his brother help out. (*Id.*). He reported that the things he was able to do before that he cannot now included "warehouse work," "lift any lot of weight," and "concentrate." (*Id.*). He reported trouble sleeping due to pain in his hand and back. (*Id.*). He also reported trouble with personal care due to pain while reaching and dressing. (*Id.*).

Davis reported not wanting to take medicine because he felt it "harm[s] your body over time." (Tr. 221). He reported being able to cook simple meals, perform some household chores, go outside alone, drive and use public transportation. (Tr. 221-22). He shops for clothes, personal items, toys and books for his son. (Tr. 222). He continues to enjoy his hobbies of reading, playing with his son, using the computer, watching television and exercising, except that

3

he does not weight train to the extent he used to before his condition. (Tr. 223). He also reported once or twice a week talking to friends on the phone, babysitting and playing games with his nieces and nephews. (*Id.*).

Davis reported that his conditions affect his ability to lift, bend, stand, sit, complete tasks, concentrate, or use his hands. (Tr. 224). He reported being able to lift 25-30 pounds, being able to use his right hand but not his left, and being able to walk two miles before needing to rest 15-20 minutes. (*Id.*). He reported that his level of concentration depends on "how interesting something is." (*Id.*). He reported being able to follow spoken and written instructions well. (*Id.*). He also reported difficulty dealing with police, but that he had good relations with other authority figures such as teachers or landlords. (Tr. 225). He reported that he had been told that he has anxiety and bipolar disorder. (*Id.*).

In an undated disability appeals report, Davis reported that his back pain had become worse and he has trouble moving around on a daily basis. (Tr. 229). He reported that he has "mental problems of anxiety and concentration" due to his hand and back pain. (*Id.*).

    2.    *Plaintiff's Testimony*

At the June 28, 2011 hearing, Davis amended his claim to allege a closed period of disability, from March 29, 2008, (the day after the last ALJ opinion), through August 1, 2009, when he obtained full time employment at which he remained as of the date of the hearing. (Tr. 33). Davis testified that he is right-hand dominant. (Tr. 35). He testified that during the closed period he had no use of his left hand. (Tr. 38). He testified that during that time he had trouble sleeping due to "sharp," "nagging" pain in his left hand. (Tr. 33). His energy level during that period was "kind of weak" due to irritation from his hand condition. (Tr. 36). He found it hard to concentrate. (*Id.*). He took several naps a day because of fatigue. (Tr. 39). He testified that

4

he was unemployed at the time and that "[i]t was hard to find gainful employment." (Tr. 36). He testified that it was difficult having no income and trying to raise a son. (*Id.*). He also had a hard time obtaining treatment for his condition due to his lack of insurance. (Tr. 38).

      3.     *Medical Evidence*

Davis's medical records for the closed period consist of four pages of treating records from one appointment on November 14, 2008, and a physical residual functional capacity "RFC" assessment, dated December 18, 2008.[1]

      *a.*     *Treating Sources*

Davis presented to Dr. Anusuya Babu on November 14, 2008, complaining of moderate left hand pain radiating to his chest. (Tr. 240). While the treatment notes document an examination of Davis's right and left elbows, as well as his right hand, there is no documented exam of his left hand. (Tr. 240-42). An x-ray taken of his left hand was normal. (Tr. 239). The doctor prescribed a hand splint and Motrin. (Tr. 241).

      *b.*     *Consultative and Non-Examining Sources*

On December 18, 2008, a disability examiner rendered a physical RFC for Davis based on a review of the record and the previous ALJ decision (which the examiner adopted). (Tr. 243-50). The examiner found that Davis could lift 20 pounds occasionally and 10 pounds

---

[1] According to the previous ALJ decision, Davis originally sustained an injury to his left hand when he slipped and fell at work on July 26, 2004. (Tr. 60). Davis's current claim is based, as it must be, on changed circumstances regarding his condition. *See* Acquiescence Ruling (AR) 98-3(6) and 98-4(6) ("When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."). Therefore, the Court discusses only the current medical evidence of record in this case to determine whether such a change exists.

frequently with a limited ability to push and pull. (Tr. 244). He could stand or walk six hours in an eight-hour day, and sit for the same amount of time. (*Id.*). He could occasionally climb ramps and stairs, balance stop, kneel, crouch or crawl, but could never climb ladders, ropes or scaffolds. (Tr. 245). He had limited ability to handle in that he can use his left hand to assist the right hand when lifting objects. (Tr. 246). The examiner noted that "recent MER shows extremities appear normal." (*Id.*).

### 4. Vocational Expert's Testimony

VE James Engelkes testified at the hearing. (Tr. 40). The ALJ asked the VE to imagine a hypothetical claimant of Davis's age, education, and vocational experience, who could

> perform light work, except that he would have no use of his left upper extremity; lift 20 pounds occasionally, 10 pounds frequently with the right upper extremity, claimant is right-hand dominant; stand and walk six hours in an eight-hour day; sit for six hours in an eight-hour day.

(Tr. 41-42). The ALJ then asked if such an individual could perform any of Davis's past work. (Tr. 42). The VE testified that he could not. (*Id.*). The ALJ then asked if there were other jobs in the national economy that such an individual could perform. (*Id.*). The VE testified that such an individual could perform the jobs of host positions (5,000 jobs in the regional economy) and customer service representative (8,000 jobs). (*Id.*). The ALJ then asked if he found that the claimant needed to take naps for 2 hours in an eight hour day, whether those jobs would still be available. (Tr. 42-43). The VE testified that they would not. (Tr. 43). Finally, Davis's counsel asked whether being off-task for 20 percent of the time would be work-preclusive. (*Id.*). The VE testified that it would not, but that being off-task for 25 percent of the time would be. (*Id.*).

### C.     **Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant

part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

In situations such as this where there exists a previous ALJ decision denying a claimant

disability benefits, an ALJ reviewing a subsequent claim is bound by the RFC assessment of the previous ALJ decision unless he determines there is new and material evidence demonstrating changes in the claimant's conditions or there has been a change in the law. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); Soc. Sec. Acquiescence Ruling 98-3(6), 98-4(6).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ concluded that Davis was not disabled. At Step One, the ALJ found that although Davis engaged in substantial gainful activity beginning on August 1, 2009, there was a continuous twelve-month period preceding that date where he did not engage in substantial gainful activity, which included the closed period of disability for which he was requesting benefits. (Tr. 19-20). At Step Two the ALJ found the following severe impairments: "status post fractures o[f] the 3rd and 4th metacarpals of the left hand and chronic pain syndrome" (Tr. 20), which was the same finding as that of the prior ALJ decision. (Tr. 59). At Step Three the ALJ found that none of Davis's severe impairments, either alone or in combination, met or medically equaled a listed impairment. (*Id.*). Next, the ALJ assessed Davis's RFC, finding him capable of

> light work . . . except that he has no use of his left upper extremity. He can lift 20 pounds occasionally and 10 pounds frequently with the right upper extremity (claimant is right hand dominant). He can stand/walk up to 6 hours in an 8 hour day and can sit up to 6 hours in an eight hour day.

(*Id.*). The ALJ concluded that he was bound by the previous ALJ's RFC determination, as the evidence presented by Davis was insufficient to show a changed circumstance in his condition to warrant a new RFC. (Tr. 21). At Step Four, the ALJ concluded that based on this RFC, Davis could not perform any of his past relevant work, as he was bound by the previous ALJ determination at this step. (Tr. 22-23). At Step Five, the ALJ found that, given Davis's age,

8

education, vocational experience and RFC, and based in part on VE testimony, there were a significant number of other jobs in the national economy that Davis could still perform. (Tr. 23). Therefore, he was not disabled. (Tr. 24).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499

F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **F.    Analysis**

Davis alleges that the ALJ erred in formulating his RFC and in failing to pose hypothetical questions to the VE that included all of Davis's credible limitations. He also alleges that the ALJ erred in assessing his credibility. The Court addresses each argument in turn.

    *1.    Credibility*

Davis argues that the ALJ erred in assessing his credibility. The Court disagrees. The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to

produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Here, the ALJ acknowledged Davis's testimony of the limiting effects of his conditions, including the alleged need to take frequent naps and lack of concentration, but then appropriately found those statements to be not credible in light of the objective medical evidence which was essentially normal, and in light of Davis's own admitted activities of daily living, which included, among other things, caring for his son, spending time with his nieces and nephews, preparing simple meals, performing household chores, and exercising. (Tr. 21-22). The ALJ specifically found that "the preponderance of the medical evidence does not reveal disabling pain, disabling movement limitations or other complications to the extent alleged . . ." (Tr. 22).

While Davis argues that the ALJ improperly weighed his lack of medical treatment despite the fact that he testified to not having insurance at the time, the Court finds that the ALJ did not give this fact improper weight. While the ALJ did note the dearth of medical treatment during the closed period, he also noted that there was no indication that Davis "had sought to avail himself of free or reduced-fee care clinics available in the community). (Tr. 22). He also noted that Davis' November 2008 office visit clinical presentation was "essentially normal," and that, despite the "absen[ce of] substantive medical treatment, [Davis had] nonetheless been able to return to full-time competitive employment." (*Id.*). These are all good reasons supporting the weight the ALJ gave to the lack of objective medical evidence.

11

Ultimately, the ALJ found that, even giving "reasonable credit" to Davis's testimony and findings of his treating physician, the other evidence of record failed to support a conclusion that he was unable to perform substantial gainful activity. (*Id.*). On this record, the Court finds there is no reason to disturb the ALJ's credibility determination.

## 2. *Formulation of the RFC and Posing of Hypothetical Questions*

Davis next argues that the ALJ erred in his RFC formulation. It appears Davis's argument is premised, at least in part, upon the ALJ's decision not to include limitations that he did not find credible, including Davis's allegation that he needed to take frequent naps and had trouble concentrating. (Tr. 21-22) (noting Davis's complaints that "his energy level was weak and it was hard to concentrate," but rejecting the extent of those impairments for the reasons discussed above). Davis's alleged need to nap frequently and his inability to concentrate were limitations supported only by his subjective testimony and, as stated above, the ALJ is "the ultimate arbiter of [Davis's] credibility." *Id.* To that extent, the Court finds those issues have been sufficiently addressed above with the affirmance of the ALJ's credibility determination. *See Powell v. Comm'r of Soc. Sec.*, No. 12-12955, 2013 U.S. Dist. LEXIS 100554, *33 (E.D. Mich. June 10, 2013) *adopted by* 2013 U.S. Dist. LEXIS 99652 (E.D. Mich. July 17, 2013) (ALJ only required to incorporate into RFC and pose in hypothetical limitations he or she found credible) (citing 20 C.F.R. § 404.1546(c); *Casey v. Sec'y Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Therefore, the ALJ's decision not to incorporate these limitations into either his RFC or his hypothetical questions posed to the VE is supported by substantial evidence of record. Furthermore, to the extent Davis's argument is premised upon his inability to use his left arm, that limitation was specifically included in the ALJ's RFC and in the hypothetical questions he posed to the VE. Because the ALJ's RFC and hypothetical questions

included all credible limitations, the ALJ properly relied on the VE's testimony that there were a significant number of jobs that Davis could still perform. Therefore, the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Davis's Motion for Summary Judgment [9] be DENIED the Commissioner's Motion [13] be GRANTED and this case be AFFIRMED.

Dated: December 9, 2013　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class

U.S. mail addresses disclosed on the Notice of Electronic Filing on December 9, 2013.

                                                    s/Felicia M. Moses
                                                    FELICIA M. MOSES
                                                    Case Manager